## CONSENT OF ABUTTING OWNER NECESSARY TO LAYING OF GAS PIPE UNDER SIDEWALK.

[Common Pleas Court of Franklin County.]

THE FEDERAL GAS & FUEL COMPANY v. HENRY TOWNSEND ET AL.

Decided, October 13, 1903.

*Street—Rights of an Abutter—As Against a Gas Company Duly Authorized to Lay Pipes Under the Sidewalk—A New Servitude Imposed—And Consent of Abutter Necessary—Presumption as to Title of Abutter on the Old National Road.*

1. The principle announced in *Callen* v. *Edison Electric Light Co.*, 66 O. S., 166, that "the placing by a private lighting company of poles in the curb of the street, and the stringing thereon of electric cables and wires for the purpose of furnishing light and energy to private takers, is a diversion of the street from the purpose to which it was dedicated, and a taking of the property of the abutting owner within the meaning of Section 19 of the Bill of Rights," applies with equal force to the laying of a pipe longitudinally with and under the sidewalk for the conveyance of natural gas to private consumers; and notwithstanding the laying of such pipe is under and by virtue of a city ordinance, the company can not enjoin interference therewith by an abutting property owner, if the putting in of the pipe will injure him to an appreciable extent.

2. Such an injury would clearly result from the tearing up of the sidewalk, interference with ingress and egress, the necessity of getting at the pipe for repairs, the danger of gas escaping into cellars, and interference with use by the lot owner of the space under the sidewalk as a cellar area.

3. The laying of such a pipe can not, therefore, be proceeded with until compensation has been made to the property owner, or his consent has been secured.

4. Where the sidewalk under which it is proposed to lay the pipe is in a part of what was once the old National road, the burden is upon the gas company to establish that no right remains in the abutter, but that the land was conveyed to the general government for road purposes, not by a qualified or determinable fee, but in fee absolute. In the absence of such proof the presumption is that the abutter owns to the center of the street.

BIGGER, J.

The plaintiff brings this action to obtain an injunction restraining the defendant, Townsend, from interfering with the plaintiff company in the laying of its gas pipe or main under the pave-

ment in front of said defendant's premises on West Broad street in this city.

In substance the plaintiff avers that it is engaged in the work of laying pipe in this city for the purpose of conveying natural gas to the consumers thereof, and that it is laying such pipe under and by virtue of certain ordinances of the city authorizing it to lay such pipe. By virtue of these ordinances the plaintiff corporation claims the right and privilege of using and occupying the streets and alleys of the city for the purpose of constructing and maintaining its lines of pipe for the purpose of conveying natural gas to its customers in this city.

It avers that in pursuance of this right and privilege it is at present engaged in laying its pipe along West Broad street. It is further stated that the ordinances granting these rights and privileges stipulate and require that the said pipes shall be placed, when practicable, in the alleys parallel with the streets, and in case there be no alley or it should be impracticable to lay pipes in the alleys, then that they shall be placed under the sidewalks.

It is then averred that the board of public service of this city found and determined that it was not practicable to lay the pipes in the alley parallel with Broad street, but that said board of public service directed the plaintiff to lay its pipes inside the curb under the sidewalk pavement on the north side of said Broad street; that the defendant, Townsend, refuses to permit the plaintiff to make an excavation under the sidewalk pavement in front of his premises for the purpose of laying its pipe thereunder.

It is averred that the plaintiff is not permitted by the city authorities to lay its pipes elsewhere than under the said pavement, and that unless it be permitted to lay its pipe under the pavement it will be subjected to irreparable damage, and asks that the defendant, Townsend, be enjoined from interfering with the work.

The plaintiff further states that West Broad street is a portion of the public highway known as the Cumberland, or National, road, heretofore ceded by the government of the United States to the state of Ohio.

The case is submitted to the court upon the application of the plaintiff for a temporary restraining order.

After a careful examination of the questions involved, I have reached the conclusion that the court would not be warranted in granting a restraining order in this case. The plaintiff is a private

corporation engaged in the business of conveying the product known as natural gas to consumers in this city. In the case of *Callen* v. *The Edison Electric Light Company*, 66 Ohio St., p. 166, the Supreme Court decided that:

"The placing by a private lighting company of poles at the curb in the street, and the stringing thereon of electric light cable lines and wires for the purpose of furnishing light and energy to private takers, is a diversion of the street from the purposes to which it was dedicated, and is a taking of the property of the abutting owner within the meaning of Section 19 of the Bill of Rights. And such placing of poles, lines and wires is none the less an unauthorized taking, even though it be consented to by the city authorities.

"And where it appears that the acts of the lighting company in so placing its poles, lines and wires were done without the knowledge or consent of the lot owner, and that their maintenance will work injury to his property, appreciable in character and amount, such owner has a right to an injunction against such maintenance and an order for removal."

This case seems to me to be decisive of the question here presented, unless the acts of a natural gas company seeking to place its pipes under the sidewalk for the purpose of conveying its product to the consumers can be distinguished in principle from that of an electric lighting company placing its poles and wires over the sidewalk for the purpose of conveying its product to its consumers. In each case the corporation is a private corporation, seeking to convey its product to the consumer for profit. In the electric light case, as in this case, it was not made to appear that the use of the street for the purpose contemplated was in any way connected with the use of the street itself by the public for travel. In the Callen case while it appeared that from time to time the electric light company had contracts with the city for lighting certain streets, market houses, etc., in the case at bar it does not appear even that the plaintiff has, or at any time had a contract with the city for the use of its product in any manner connected with the public use of the streets or that its product is to be used in any manner connected with the public use of the streets for travel.

In the Callen case the statement of facts shows that evidence was introduced by the plaintiff to show that the plaintiff's property was rendered less valuable by an amount from eight hundred to

twelve hundred dollars. But the Supreme Court held that the amount of damages was not material, and that if the erection and maintenance of the defendant's poles and wires would injure the plaintiff to any appreciable extent, then he was entitled to an injunction. Upor this point Judge Spear says:

"It is a question of right and right only. We are not required to determine whether the impairment will be much or little. If it is appreciable in character and amount, the plaintiff is entitled to relief."

Would the placing of the pipes under the sidewalk injure the defendant in this case to an appreciable amount? In the first place, the placing of the pipes necessitates the tearing up of the sidewalk in front of his premises and must of necessity be an injury to some extent in the way of obstruction of ingress and egress.

Again, the right to lay its pipes of course carries with it the right and imposes the duty of keeping the same in repair, which, whenever it becomes necessary, will again necessitate the tearing up of the pavement and the making of the excavation through the sidewalk.

Furthermore, it has been frequently decided that abutting lot owners have a right to excavate under the sidewalk for the construction of cellar areas, and this use of the space under the sidewalk by abutting owners is so common in our own and all other cities that the right to such use and its value to abutting property owners would, I presume, hardly be questioned. If one pipe may be laid under the sidewalk, then more may be laid, until this right of the abutting owner is entirely destroyed. As Judge Spear pointed out in the Callen case if the right exist to erect two poles, upon the same principle twenty poles might be planted.

Again, it is a well-known fact that natural gas is liable to escape from pipes into cellars and is an extremely dangerous agency under such circumstances.

I therefore conclude that the court, in view of these considerations, would not be warranted in holding that the placing of these pipes under the sidewalk in front of defendant's premises would not impose any additional burden upon the easement. Indeed, I think it can not be distinguished in principle from the case of an electric lighting company placing its poles and wires over the sidewalk. The right of property owners as anciently announced is to "All above and under ground except only the right of passage for

the king and his people." This, I understand still to be the rule
of law that the abutter owns all above and under ground, subject
only to the right of the public to use the street for purposes of
public travel or some purpose connected therewith, and that private
corporations are not entitled to erect any structure over or under
a sidewalk for the purpose of conveying their products to private
consumers without first making compensation to the abutting own-
ers for an additional burden imposed.

The question in all cases where it is sought to erect any perma-
nent structure upon a public street is: "Was such use of the ease-
ment within the terms of the original grant or dedication?" Can
it be fairly said that the original grant for street or road purposes
included such a use as that here sought to be made of it by the
plaintiff corporation? It is not a use of the street for public travel.
Neither does it appear that the product to be conveyed is to be
connected in any way incidentally with the use of the street for
public travel. As Judge Spear says in the Callen case:

"It is wholly for private use. Hence, it is a private purpose and
is not a street purpose in any aspect of it."

It is true, as pointed out in the opinion in the Callen case, that
there are certain structures which may be erected in the public
streets and which may be fairly considered to have been within the
terms of the original grant because incidentally connected with the
use of the street for purposes of public travel, as, for instance,
sewers to drain the streets, and until comparatively recent times,
gas was used for the lighting of the streets. But there is no claim
here that any such use is to be made of the natural gas conveyed
by the plaintiff to its consumers. If a private corporation convey-
ing gas to its consumers for fuel and light may erect a permanent
structure in the streets, upon the same principle a coal company
may insist upon its right to lay a track upon the streets to convey
its fuel to its consumers; or any other private corporation, having
some commodity to convey to its consumers, may erect permanent
structures in the streets for its private use in no way connected
with public travel. This, in my opinion, in the light of the recent
decisions of the Supreme Court, is the imposition of new and addi-
tional burdens upon the easement, and that such structures can not
be constructed in the streets without first obtaining the consent
of the abutting property owners.

This same question was before the Common Pleas Court of Ma-
honing County in the case of *Webb et al and Predmore et al* v.
*The Ohio Gas Fuel Company,* and will be found reported in 16
L. B., at p. 121.   The court held "that a private corporation, or-
ganized for the purpose of transporting and selling natural gas
for fuel, has no right under an ordinance of the city council, per-
mitting the company to lay its pipes through the streets of the
city, to enter upon the public streets of the city and to operate
its plant without the permission of, and compensation to, the hold-
ers of the fee in the street, and that the laying of such pipes in the
public streets subjects the street to an additional burden and servi-
tude."

There is another question in the case, and that arises from the
fact stated in the petition that West Broad street is a portion of
the Cumberland, or National, road.   This National road was after-
wards by act of Congress ceded to the state of Ohio—that is, con-
trol over the road and it's care and maintenance were transferred
by the general government to the state of Ohio, and by act of the
Legislature it was provided that the councils of municipalities
through which the road passes shall have power to improve, repair,
widen and grade the road-bed, gutters and sidewalks of said road
within the corporate limits of said cities in the same manner and
upon the same terms that such city councils are now authorized to
make such improvements, repairs, grades, etc.   It is not clear just
what the nature of the right of the city of Columbus in West Broad
street as a portion of the old National road is, but, of course, it is
no greater than the right which the national government obtained
in the first place in so far as the rights of abutters are concerned.
There is nothing before the court from which it could be determ-
ined what the nature of the grant was of this particular portion
of the National road.   The general government, like the state gov-
ernment, is clothed with the power of eminent domain.   That is
a power which is inherent in both the national and state govern-
ments, and is not created by state or national Constitutions, but
is controlled and limited by constitutional provisions.   But this is
a power which arises from public necessity, and where there is no
necessity for taking private property for public use, the right of
eminent domain can not be successfully invoked.   The general gov-
ernment in the exercise of it's power acquired land from private
individuals.   It is probably true that the government could obtain

the title in fee absolute to the land it acquired from the individual owners, but this question can only be determined from the terms of the grant or deed conveying the land to the general government, or by evidence showing in what manner the government obtained its right to the use of the land.

Now it is a presumption of law that obtains in all cases in favor of abutting land owners that they own to the middle of the highway. Elliott on Roads and Streets, Section 690, says:

"The presumption is that the adjoining proprietors on each side of the road own to its center."

The same author says at Section 886:

"As the abutting owner on each side is presumed to own the fee to the center of the street, he will generally be entitled to take the land to the center of the street upon its vacation or abandonment. But the general rule may be controlled by the words of the deeds, or by the peculiar circumstances of the case, and the abutting owners may not be entitled to any part of the land. We suppose, however, that it would require clear words or some marked peculiarities to take the case out of the operation of the general rule and remove it from the sweep of the presumption that the abutters own to the middle thread of the highway."

Kent in his Commentaries says, Vol. 3, p. 432, that the law with respect to public highways and to fresh water rivers is the same, and the analogy perfect as concerns the right of soil. The presumption is that the owners of the land on each side go to the center of the road, and they have the exclusive right to the soil, subject to the right of passage in the public.

In the state of the evidence in this case I think this presumption obtains here. In this state it is a rule of law that upon abandonment of the public use the land reverts to the owner of the abutting property and not to the original grantor or dedicator. The terms of the grant to the general government are not before the court. The burden is, however, upon the plaintiff to establish the fact that no right remains in the abutter, but that the land in front of this defendant's premises conveyed to the general government for road purposes, was conveyed not by a qualified or determinable fee, but in fee absolute. It is only by such proof that the general presumption in such cases can be overcome, and in the absence of such proof the presumption obtains.

I therefore conclude that the plaintiff is not entitled to an injunction restraining the defendant from interfering with the lay-

ing of these pipes under the sidewalk in front of his premises, and the application for such restraining order must be denied.

*Henry A. Williams,* for plaintiff.

*Henry Townsend,* for defendant.