[Cite as *State ex rel. E. Ohio Gas Co. v. Stark Cty. Bd. of Commrs.*, 2012-Ohio-4533.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, EX REL., THE EAST OHIO GAS COMPANY (dba DOMINION EAST OHIO) | JUDGES:<br>Hon. Sheila G. Farmer, P. J.<br>Hon. John W. Wise, J.<br>Hon. Julie A. Edwards, J. |
|     Relator-Appellant | |
| -vs- | |
| | Case No. 2012 CA 00019 |
| THE BOARD OF COUNTY COMMISSIONERS OF STARK COUNTY | |
|     Respondent-Appellee | O P I N I O N |

CHARACTER OF PROCEEDING:      Civil Appeal From the Court of Common Pleas, Case No. 2011 CV 03135

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      September 28, 2012

APPEARANCES:

For Relator-Appellant

JEROME W. COOK
LUCY K. SHAUGHNESSY
ERIN K. WALSH
MCDONALD HOPKINS LLC
600 Superior Avenue East, Suite 2100
Cleveland, Ohio 44114

For Respondent-Appellee

JOHN D. FERRERO
PROSECUTING ATTORNEY
DAVID M. BRIDENSTINE
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio 44702

*Wise, J.*

**{¶1}** Relator-Appellant East Ohio Gas Company dba Dominion East Ohio appeals the January 5, 2012, decision of the Stark County Court of Common Pleas denying its Writ of Mandamus and dismissing its Complaint.

**{¶2}** Respondent-Appellee is the Board of County Commissioners of Stark County.

<u>STATEMENT OF THE FACTS AND CASE</u>

**{¶3}** The underlying facts as set forth in the trial court's judgment entry are as follows:

**{¶4}** On or about May 20, 1848, Stark County acquired a 40 foot right of way known as Daniel Knolls Roads, which later became known as Applegrove Street. Plain Township was organized in 1809 and existed outside any incorporated area. The Applegrove Right-of-Way (Applegrove ROW) conferred no sub-surface rights to Stark County. The adjacent land owners continued to own the fee interest in the sub-surface to the center line of the Applegrove ROW. From 1933 through 1966, Dominion obtained natural gas pipeline easements from these adjacent landowners for the installation of natural gas pipelines through and under their lanes to the full extent of their interest, which included interest in their lands adjacent to and under Applegrove Street. Subsequently, Dominion installed natural gas pipelines and other utility facilities and appurtenances.

**{¶5}** In 2007, Stark County embarked on a project to widen Applegrove Street. As a result of this project, on or about December 18, 2007, Stark County informed Dominion that various natural gas pipelines needed to be relocated at or near

Applegrove Street. The road widening project required Dominion to remove its natural gas pipeline facilities from its private easement areas under and adjacent to Applegrove Street. Dominion alleges that the relocation costs were approximately $326,492.14. Dominion claims that the Board of Commissioners of Stark County is required to compensate them for the relocation.

{¶6} On September 30, 2011, Appellant East Ohio Gas Company filed a Complaint against Appellee Stark County Board of Commissioners in the Stark County Court of Common Pleas alleging that it was entitled to a writ of mandamus to compel Stark County to initiate eminent domain proceedings to appropriate the private rights-of-way that were taken from it and to compensate it for the relocation expenses incurred.

{¶7} In its Complaint, Dominion/East Ohio Gas Company alleged it relied upon the DEO ROW and expended capital to install natural gas pipeline facilities both in the subsurface beneath Applegrove Street as well as in areas adjacent to Applegrove Street; that 8,923. 77 linear feet of natural gas pipeline facilities had to be relocated from the DEO ROW as a result of the Project; that it repeatedly made demand upon Appellee County for reimbursement for $326,492.14 of relocation costs associated with relocating its natural gas pipeline facilities that existed in the DEO ROW both beneath and adjacent to Applegrove Street; that its natural gas pipeline facilities, though a portion existed beneath Applegrove Street, were not within the road right-of-way any more than the natural gas pipeline facilities that were in DEO ROW adjacent to Applegrove Street; that Appellee County had admitted that it recognized a duty to reimburse Appellant Dominion for portions of the relocation but had not even compensated Appellant Dominion for those portions; and, that at no time did Appellee

County compensate it for any of the relocations or commence appropriation proceedings that would be required by a county to forcibly invade the private property interests of Appellant Dominion.

{¶8} On October 27, 2011, Appellee filed a motion to dismiss the complaint.

{¶9} On November 17, 2011, Appellant responded with an opposition brief.

{¶10} By judgment entry filed January 5, 2011, the trial court denied the writ of mandamus and dismissed Relator-Appellant's Complaint.

{¶11} Relator-Appellant now appeals, raising the following Assignments of Error:

**ASSIGNMENTS OF ERROR**

{¶12} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY EXPRESSLY REJECTING THE CONTROLLING AUTHORITY IN THE FIFTH APPELLATE DISTRICT, NAMELY, *St. Albans Township Board Of Trustees v. Columbia Gas Transmission Corp.*, 116 Ohio App.3d 349, 688 N.E.2d 48 (5th Dist. 1997).

{¶13} "II. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT DOMINION'S COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED WHEN IT CLEARLY CONTAINED SUFFICIENT FACTUAL ALLEGATIONS THAT APPELLANT DOMINION'S PRIVATE PROPERTY INTERESTS WERE TAKEN AND INVADED BY APPELLEE COUNTY WITHOUT COMPENSATION IN VIOLATION OF OHIO AND UNITED STATES CONSTITUTIONAL PROTECTIONS.

{¶14} "III. THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT DOMINION'S COMPLAINT IN ITS TOTALITY DESPITE THE FACT THAT APPELLANT DOMINION'S COMPLAINT INCLUDED SUFFICIENT FACTUAL ALLEGATIONS THAT

APPELLANT DOMINION'S PRIVATE PROPERTY INTERESTS THAT WERE TAKEN AND INVADED WERE NOT LIMITED TO THOSE THAT EXISTED BELOW THE ROAD SURFACE BUT THAT APPELLANT DOMINION'S PRIVATE PROPERTY INTERESTS ALSO EXISTED ADJACENT TO THE PUBLIC ROAD RIGHT-OF-WAY."

I.

{¶15} Appellant herein argues that the trial court erred in not following *St. Albans Township Board Of Trustees v. Columbia Gas Transmission Corp.* (1997), 116 Ohio App.3d 349. We disagree.

{¶16} In *St. Albans*, the defendant Columbia Gas Transmission Corp. acquired easements from two adjoining landowners to place its gas transmission lines over their private property. These transmission line easements also ran beneath a pre-existing dedicated public road. The public roadway came into existence in 1832. The pipeline easements were acquired in 1954.  Some forty plus years after the pipelines were installed, St. Albans Township desired to lower the grade of the road, which required the relocation of the pipelines.  The St. Albans Township Board of Trustees and the Licking County Board of Commissioners filed suit to force Columbia Gas to move or relocate its pipelines. Columbia Gas maintained that it should not be required to move the transmission line at its own expense. The trial court held that St. Albans Township had to pay for the relocation of the pipelines, basing its holding largely on its finding that no subsurface rights attached to the Township's easement for the operation of the roadway. *Id.* at 51. This Court affirmed and incorporated the decision of the Court of Common Pleas.

**{¶17}** We must now determine whether *St. Albans* should be applied to the present matter as controlling precedent. We begin by noting that the doctrine of *stare decisis* is a revered means for ensuring continuity and predictability in our justice system. *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849. Only when there is a "special justification" shall a reviewing court depart from the doctrine of *stare decisis. Id.* at ¶ 44. Even so, a steadfast adherence to this doctrine is not warranted when a reviewing court discovers that one of its prior decisions was erroneous. *Id.*

**{¶18}** The Ohio Supreme Court has developed a three-part test for determining whether to overrule a prior decision, stating:

**{¶19}** "Thus, in Ohio, a prior decision of the Supreme Court may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it." *Id.* at ¶ 48.

**{¶20}** Although the high court set forth this test in the context of determining whether to overrule one of its own decisions, it stands to reason that a state court of appeals may appropriately apply the same factors in deciding whether to overrule one of its prior decisions. Consequently, these factors guide our scrutiny of *St. Albans.*

**{¶21}** Upon review of the *St. Albans* decision, we find that in reaching its decision, the Court of Common Pleas relied on two Ohio Supreme Court cases. *See Ohio Bell Tel. Co. v. Watson,* (1925) 112 Ohio St. 385; *Callen v. Columbus Edison Elec. Light Co.,* (1902) 66 Ohio St. 166.

**{¶22}** Subsequent to *Ohio Bell v. Watson*, *supra*, and *Callen v. Columbus Edison*, *supra*, but prior to this Court's decision in *St. Albans*, the Ohio Supreme Court decided *Ziegler v. Ohio Water Service*, (1969) 18 Ohio St.2d 101.

**{¶23}** In *Ziegler*, the Ohio Supreme Court held that an easement for highway purposes creates both surface and sub-surface rights. In *Ziegler,* a landowner brought suit for injunction against a water company from entering the plaintiff's premises until the easement had been negotiated or appropriated. The Ohio Supreme Court determined that the water company's construction of water pipes in the real property sub-surface, for which an easement for highway purposes was given, was not an added burden to the property owner which would entitle him to compensation. *Id.* at 105.

**{¶24}** To the extent that the Supreme Court in *Ohio Bell v. Watson*, *supra*, and *Callen v. Columbus Edison*, *supra*, held that an easement for a public highway does not include the subsurface property rights, those cases were implicitly overturned by *Ziegler, supra*.

**{¶25}** For the foregoing reasons, we find that our prior decision in *St. Albans* adopting the trial court's decision was erroneous.

**{¶26}** We likewise find that the trial court did not err in failing to apply *St. Albans* to the instant case.

**{¶27}** Appellant's First Assignment of Error is overruled.

II., III.

**{¶28}** In its Second and Third Assignments of Error, Appellant argues that the trial court erred in dismissing its complaint for failure to state a claim.  We disagree.

{¶29} The trial court below found that Appellant's action for a writ of Mandamus against Appellee Board of Commissioners was not supported by the current case law and dismissed Appellant's Complaint.

{¶30} In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt from the complaint that Relator can prove no set of facts entitling him to recovery. *O'Brien v. University Community Tenants Union* (1975), 42 Ohio St.2d 242, 327 N.E.2d 753. As such, a complaint for writ of mandamus is not subject to dismissal under Civ.R. 12(B)(6) if the complaint alleges the existence of a legal duty by the respondent and the lack of an adequate remedy at law for Relator with sufficient particularity to put the respondent on notice of the substance of the claim being asserted against it, and it appears that Relator might prove some set of facts entitling him to relief. *State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn.,* 72 Ohio St.3d 94, 647 N.E.2d 788, 1995–Ohio–202.

{¶31} Relator herein claims entitlement to the requested relief in mandamus pursuant to the Takings Clause of the Ohio Constitution. Section 19, Article I of the Ohio Constitution provides:

{¶32} "[W]here private property shall be *taken for public use,* a compensation therefor shall first be made in money, or first secured by a deposit of money, and such compensation shall be assessed by a jury." (Emphasis added.)

{¶33} In *State ex rel. Blank v. Beasley* 121 Ohio St.3d 301, 304-305, the Ohio Supreme Court explained:

{¶34} "We have acknowledged that Section 19, Article I of the Ohio Constitution limits compensation to those situations where private property is *taken* for public use, in contrast to the constitutions of some states, which guarantee compensation for private property that is taken for or *damaged by* public use. *State ex rel. Fejes v. Akron* (1966), 5 Ohio St.2d 47, 50, 34 O.O.2d 58, 213 N.E.2d 353, citing *McKee v. Akron* (1964), 176 Ohio St. 282, 284, 27 O.O.2d 197, 199 N.E.2d 592, overruled on other grounds by *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749. Accordingly, we have construed this constitutional provision to require a property owner to prove something more than damage to his property in order to demonstrate a compensable taking. *Fejes*, at 52, 34 O.O.2d 58, 213 N.E.2d 353.

{¶35} In a more recent case, the Ohio Supreme Court set forth the following two-part test for inverse-condemnation claims:

{¶36} "[N]ot every 'invasion' of private property resulting from government activity amounts to an appropriation. The line distinguishing potential physical takings from possible torts is drawn by a two-part inquiry. First, a property loss compensable as a taking only results when the government intends to invade a protected property interest or the asserted invasion is the 'direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action.' *Columbia Basin Orchard v. United States* (Ct.Cl.1955), 132 F.Supp. 707, 709 * * *. * * * Second, the nature and magnitude of the government action must be considered. Even where the effects of the government action are predictable, to constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owner's right to enjoy his property for an extended period

of time, rather than merely inflict an injury that reduces its value." *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, citing *Ridge Line, Inc. v. United States* (Fed.Cir.2003), 346 F.3d 1346.

**{¶37}** Upon review, we find that in the case *sub judice*, it is uncontroverted that Stark County obtained its 40 foot right of way in what is now known as Applegrove Street back in 1848.  Subsequent to such, from 1933 through 1966, Dominion/East Ohio acquired its natural gas pipeline easements from the adjacent landowners and installed natural gas pipelines through and under such land adjacent to and under Applegrove Street.

**{¶38}** Appellant herein argues that under *St. Albans*, *supra*, the government's easement did not include sub-surface rights and that Appellant's easement rights, which included sub-surface rights, was superior thereto.

**{¶39}** As this Court has found *St. Albans* to have been erroneously decided, we find Appellant's arguments in support of their complaint for a writ of mandamus to be without merit.

**{¶40}** The public has the right to improve and use the land upon which a common highway has been established. *See Chagrin Falls & C. Plank Road Co. v. Cane*, (1853) 2 Ohio St. 418; *Lawrence R. Co. v. Williams*, (1878) 35 Ohio St. 168. The right to improve includes the power to grade, bridge, gravel, etc.  *Lawrence R. Co.*, supra.  These powers have been codified in R.C. §5555.02, which states in relevant part:

> The board of county commissioners may construct a public road by laying out and building a new road, or by improving, reconstructing, or repairing any existing public road or part of an existing public road by grading, paving, widening, altering, straightening, vacating, changing the

direction, draining, dragging, graveling, macadamizing, resurfacing, applying dust preventives, or otherwise improving the same, and, where an established road has been relocated, the board may construct and maintain connecting roads between the old and new locations as will provide reasonable access thereto. The board also may place a county road on non-maintained status pursuant to section 5541.05 of the Revised Code. The board may purchase or lease, erect, and maintain automatic traffic signals at intersections of public highways outside municipal corporations as necessary for the protection of the public traveling upon those highways. Automatic traffic signals shall not be placed at intersections of public highways on the state highway system unless the board first obtains the approval of the director of transportation."

**{¶41}** Here, it is undisputed that the Applegrove road improvement project occurred within the existing forty foot right of way.  Such project was undertaken for roadway purposes.

**{¶42}** The United States Supreme Court has held that the cost of relocation of a utility company's lines resulting from an improvement to a roadway is not a compensable taking. *New Orleans Gaslight Co. v. Drainage Commission of New Orleans*, (1905) 197 U.S. 453, 25 S. Ct. 471. In *New Orleans Gaslight Co.,* the Court explained that the gas company had been granted the right to use the city streets for its business, but had not been granted the right to any particular location in the streets. *Id.* at 458-59. There was nothing in the franchise to indicate the city's intention to give up its control of the public streets, or its power to regulate for the public health and safety. *Id.* at 459. In fact, the Court expressly stated that "when it located its pipes it was at the risk that they might be, at some future time, disturbed, when the state might require for a necessary public use that changes in location be made." *Id.* at 461. The Court concluded by finding that in requiring the company to relocate at its own expense, no Fifth Amendment taking had occurred. *Id.*

{¶43} The rule articulated in *New Orleans Gaslight Co.* has been followed and reaffirmed in courts throughout the country. As recently as 1984, the United States Supreme Court confirmed the vitality of the rule. *Norfolk Redevelopment and Housing Authority v. C & P Telephone Co.,* 464 U.S. 30, 35 (1984) ("[u]nder the traditional common law rule, utilities have been required to bear the entire cost of relocating from a public right of way whenever requested to do so by state or local authorities").

{¶44} Here, while the easement to Dominion was granted by the owner of the real property and not granted the right by a municipality, we find the reasoning to be the same in that Appellant was not granted a right to any particular location of depth to its easement and because its easement was inferior and subservient to that of the County, it should have known that changes in location might need to be made for a necessary public use.

{¶45} We further find that Dominion/East Ohio has not been dispossessed of any of its pipeline, nor its easement within the road right of way.

{¶46} As Appellant's argument that it was also entitled to compensation for relocation of its gas pipelines in the land adjacent to the roadway, we find nothing in the Complaint to support a claim for which the trial court could have granted relief.

{¶47} Based on the foregoing, we find that Relator can prove no set of facts entitling it to recovery and that the trial court's decision granting respondent's motion to dismiss and dismissing Relator's complaint was not in error.

**{¶48}** Appellant's Second and Third Assignments of Error are overruled.

**{¶49}** For the foregoing reasons, the judgment of the Court of Common Pleas of

Stark County, Ohio, is affirmed.


By: Wise, J.

Farmer, P. J., and

Edwards, J., concur.


_____


_____


_____

                                                                JUDGES

JWW/d 0822

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO, EX REL., THE          :
EAST OHIO GAS COMPANY (dba           :
DOMINION EAST OHIO)                   :
                                     :
    Relator-Appellant            :
                                     :
-vs-                                 :          JUDGMENT ENTRY
                                     :
THE BOARD OF COUNTY                  :
COMMISSIONERS OF STARK               :
COUNTY                               :
                                     :
    Respondent-Appellee          :          Case No. 2012 CA 00019


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

Costs assessed to Appellant.


_____

_____

_____

                JUDGES